UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| MAURICE EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-2331 (PLF) |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

OPINION

     This matter is before the Court on defendants' motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56. Upon consideration of the arguments made by the parties, the Court will grant summary judgment for defendants on plaintiff's deprivation of property due process claim, and will dismiss plaintiff's deprivation of liberty claim for failure to state a claim. The Court also will dismiss plaintiff's claims for defamation and intentional infliction of emotional distress for failure to state a claim.

I.  BACKGROUND

     Plaintiff Maurice Evans was employed by the District of Columbia for 26 years, most recently as Supervisory Investigator for the Alcoholic Beverage Regulation Administration ("ABRA"). See Complaint ¶ 7. On February 13, 2003, defendant Maria Delaney, director of the ABRA, informed plaintiff that he had been placed on paid administrative leave. See Plaintiff's

Opposition to Defendants' Motion to Dismiss or in the Alternative Summary Judgment ("Pl. Opp.") at 1.  That same day, in a District of Columbia Council oversight hearing on the ABRA, Ward 4 Councilman Adrian Fenty stated that plaintiff had improperly and illegally interfered with an ABRA investigation of the Macombo Lounge, a nude dancing establishment located in Ward 4.  See id. at 2.  Plaintiff alleges that Councilman Fenty also discussed information in plaintiff's personnel file at the meeting.  See id.

On February 22, 2003, *The Washington Post* published an article reporting plaintiff's suspension.  See Arthur Santana, "Liquor Control Official Faulted by D.C. Inquiry," *The Washington Post* (February 22, 2003), Ex. B to Pl. Opp.  According to plaintiff, the article disclosed information from a confidential report of the D.C. Office of the Inspector General ("OIG") and from plaintiff's personnel file.  See Pl. Opp. at 2.  The article reported Councilman Fenty's accusations of corruption and statements that plaintiff's behavior was "atrocious."  Id.

On February 28, 2003, Delaney informed plaintiff by letter that his suspension had ended, but that he would receive a written warning regarding his involvement in the investigation of the Macombo Lounge and his duties as Supervisory Investigator would be curtailed pending the resolution of an ongoing OIG investigation.  See Pl. Opp. at 2-3.  On February 29, plaintiff and his attorney met with the Chairman of the ABRA Board of Commissioners, who advised plaintiff to retire or face termination.  See id. at 3.  According to plaintiff, the Chairman suggested a transfer to another agency because the ABRA Board would not support plaintiff in the face of a controversy involving members of the Council.  Plaintiff inquired about transferring to the D.C. Department of Housing and Community Development, but the Director of that department told plaintiff that he was "too Hot!"  Id. at 3-4.

2

*The Washington Post* published another article detailing plaintiff's situation on March 6, 2003.  See David Nakamura, "City's Chief ABC Inspector Allowed to Return to Work," *The Washington Post* (March 6, 2003); Pl. Opp. at 4.  The article quoted Councilman Fenty as alleging that plaintiff had impeded the investigation of the Macombo Lounge and as expressing his dissatisfaction with plaintiff's reappointment.  See id. at 4.  The article also stated that the Office of Personnel had found plaintiff's conduct did not warrant termination.

On March 28, 2003, plaintiff received a 15-day termination notice from Delaney, stating that plaintiff would be terminated for disciplinary reasons effective April 17, 2003.  See Pl. Opp. at 5.  The letter stated that as a Supervisory Inspector, plaintiff held a Management Supervisory Service position and thus was an at-will employee, terminable at will without any right to appeal.  See Letter from Maria Delaney to Maurice Evans (March 28, 2003), Ex. F to Pl. Opp.  Plaintiff alleges that "in order to mitigate damages arising out of this improper and illegal termination," he was forced to retire on April 17, 2003.  See Compl. ¶ 12.  After his resignation, plaintiff spoke to one D.C. government official and two potential employers in the private sector who stated that plaintiff was "to [sic] controversial to hire because of issues reported on television and in the newspaper."  Pl. Opp. at 5.

On November 11, 2003, plaintiff filed a complaint in this Court asserting due process claims under 42 U.S.C. § 1983 as well as common law claims of defamation and intentional infliction of emotional distress.  Defendants now move to dismiss plaintiff's complaint for failure to state a claim under Rule 12(b)(6) or, in the alternative, for summary judgment.

## II. DISCUSSION

### A.  Applicable Legal Standards

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the

Federal Rules of Civil Procedure may not be granted unless it appears beyond doubt that plaintiff

can prove no set of facts that supports his claim entitling him to relief.  See Conley v. Gibson,

355 U.S. 41, 45-46 (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir.

2000).  In evaluating a motion to dismiss, the Court must accept the factual allegations in the

complaint as true and draw all reasonable inferences in favor of plaintiff.  See Razzoli v. Fed.

Bureau of Prisons, 230 F.3d 371, 374 (D.C. Cir. 2000); Taylor v. FDIC, 132 F.3d 753, 761 (D.C.

Cir. 1997); Harris v. Ladner, 127 F.3d 1121, 1123 (D.C. Cir. 1997).  While the complaint is to be

construed liberally in considering a motion to dismiss, the Court need not accept inferences

drawn by plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must

the Court accept plaintiff's legal conclusions.  See Kowal v. MCI Communication Corp., 16 F.3d

1271, 1276 (D.C. Cir. 1994).

When addressing a motion to dismiss under Rule 12(b)(6), the Court generally

may not look outside the facts contained within the four corners of the complaint, see Gordon v.

National Youth Work Alliance, 675 F.2d 356, 361 (D.C. Cir. 1982), unless it treats the motion to

dismiss as a motion for summary judgment.  See FED. R. CIV. P. 12(b); Currier v. Postmaster

Gen., 304 F.3d 87, 88 (D.C. Cir. 2002); 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL

PRACTICE ¶ 12.34(2) (2002 ed.).

Summary judgment shall be granted if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits or declarations, if any,

demonstrate that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Material facts are those that

"might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, "the evidence of

the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id.

at 255; see also Washington Post Co. v. United States Dep't of Health and Human Servs., 865

F.2d 320, 325 (D.C. Cir. 1989).

In opposing a motion for summary judgment, the non-moving party's opposition

must consist of more than mere unsupported allegations or denials and must be supported by

affidavits or other competent evidence setting forth specific facts showing that there is a genuine

issue for trial.  FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The

non-moving party is "required to provide evidence that would permit a reasonable jury to find"

in his favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the

non-movant's evidence is "merely colorable" or "not significantly probative," summary

judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat a

motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to

support his claims." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

The Court cannot "weigh the evidence and determine the truth of the matter," but must

"determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S.

at 249.

Because plaintiff has failed to allege facts sufficient to support a claim for

defamation, intentional infliction of emotional distress, or deprivation of a liberty interest

without due process of law, the Court will dismiss these counts under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Because no genuine issue of material fact exists regarding the

existence of a legitimate expectation of plaintiff's continued employment with the District of Columbia, the Court will grant defendants' motion for summary judgment on plaintiff's due process/property interest claim.

### B.  Due Process Claims

To state a due process claim, a plaintiff must allege some "deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 556 (1972).  Plaintiff claims that defendants' actions deprived him of constitutionally protected interests in both property and liberty without due process of law.  See Compl. ¶ 23-26.

### 1.  Property Interest

Plaintiff first argues that he had a constitutionally protected property interest in continued employment with the ABRA, of which he was deprived without due process.  Because property interests are created and defined by state law, the existence of a property interest depends on plaintiff's claim of entitlement under District of Columbia law.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); Hall v. Ford, 856 F.2d 255, 265 (D.C. Cir. 1988).  In the employment context, the operative question is whether the plaintiff has a "legitimate expectation . . . that he would continue in his job."  Hall v. Ford, 856 F.2d at 265. Defendants argue that plaintiff had no such expectation because plaintiff was an at-will employee of the District of Columbia.  See Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Mot. Dism.") at 5-6.

At-will employees (as opposed to those terminable only for cause) have no property interest in their employment "because there is no objective basis for believing that they

6

will continue to be employed indefinitely." See Hall v. Ford, 856 F.2d at 265.  According to

defendants, plaintiff by his own admission was a "management employee," and thus a member

of the District of Columbia Management Supervisory Service ("MSS").  The Management

Supervisory Service Exclusion Amendment Act of 2000, D.C. CODE ANN. § 1-609.51, *et seq.*,

states specifically that MSS positions are at-will appointments.  See D.C. CODE ANN. § 1-609.54;

Mot. Dism. at 6.

   Plaintiff does not contest his status as an at-will employee of the MSS.  Rather,

plaintiff argues that he had a legitimate expectation of continued employment arising from the

District of Columbia Personnel Regulations, Chapter 18 of which sets out disciplinary

procedures for District employees accused of certain kinds of unethical conduct.  See Pl. Opp. at

7-11.  Plaintiff claims that under these regulations he could be terminated only for cause and was

entitled to written notice of the grounds on which action was to be taken against him, as well as

an opportunity to be heard before and after disciplinary action was taken.  See id. at 8-9.

Contrary to plaintiff's assertions, however, these regulations do not establish any extra

procedural protections for District employees, but only set forth additional categories of conduct

for which employees may face disciplinary action.  See D.C. MUN. REGS. tit. 6 §§ 1800-1802.

   Moreover, the personnel regulations in effect at the time of plaintiff's resignation

stated explicitly that "Individuals appointed to the Management Supervisory Service shall serve

at-will. . . . Nothing in [the District of Columbia Personnel Regulations] shall be construed to

extend any job tenure or protection rights to any Management Supervisory Service employee."

D.C. MUN. REGS. tit. 6 §§ 3804.3, 3805.8 (2001), 48 D.C. Reg. 2812, 2814-15 (March 30, 2001).

The only rights conferred on MSS employees by the regulations were the right to 15 days' notice

before termination, a separate notice in the event of termination for disciplinary reasons

describing the reasons for termination, and, if the employee so requests in writing, a final

administrative decision on the issue of severance pay by the personnel authority.  See D.C. Mun.

Regs. tit. 6 § 3805.5 (2001).  The District fulfilled its obligation by providing plaintiff written

notice of his impending termination.  By electing to resign, plaintiff waived his right to further

notice or an administrative decision.

       Finally, plaintiff's communications with the ABRA at the time his position was

converted to an MSS appointment leave no room for a legitimate expectation that plaintiff's

employment was anything but at-will.  See Letter from Winnie Houston to Maurice Evans

(February 8, 2002), Ex. 1 to Defendants' Reply to Pl. Opp. ("If you accept this appointment you

will not have Career Service job protection rights and will be an 'at-will' employee.");

Acceptance/Declination of Management Supervisory Service Appointment (February 8, 2002),

Ex. 2 to Defendants' Reply to Pl. Opp ("I voluntarily accept appointment to the Management

Supervisory Service.  I understand that I will no longer have Career Service job protection rights

and that . . . I will be in an at-will appointment, and I may be terminated from service with the

District government upon being given a 15-day notice prior to termination. /s/ Maurice Evans,

2/8/02").

       District of Columbia regulations and the evidence introduced by both sides

establish that there is no issue of material fact with respect to plaintiff's legitimate expectation of

continued employment with ABRA.  He had no such expectation and consequently no property

interest protected by law.  Defendants therefore are entitled to judgment as a matter of law on

plaintiff's due process/property interest claim.

2.  Liberty Interest

Plaintiff also claims that defendants' defamatory actions injured plaintiff's reputation, depriving him of a protected liberty interest in his ability to secure future gainful employment.  See Compl. ¶ 24-25.  Injury to reputation alone, however, is insufficient to constitute a violation of a protected liberty interest.  See Paul v. Davis, 624 U.S. 693, 706 (1976).  To state a due process claim based on the defamatory statements of government officials, a plaintiff must present a claim under one of two theories.  The first type of claim, usually referred to as a "reputation-plus" claim, requires "the conjunction of official defamation and adverse employment action."  O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C. Cir. 1998).  To state a reputation-plus claim, a plaintiff must allege "defamation that is '*accompanied* by a discharge from government employment or at least a demotion in rank and pay.'"  Id. (quoting Mosrie v. Barry, 718 F.2d 1151, 1161 (D.C. Cir. 1983)) (emphasis in original).

Second, a plaintiff may state a claim based on "the combination of an adverse employment action and 'a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities.'"  O'Donnell v. Barry, 148 F.3d at 1140 (quoting Bd. of Regents v. Roth, 408 U.S. at 573).  This differs from a "reputation-plus" claim in that the complaint turns not on official speech, "but on a continuing stigma or disability arising from official action."  Id.  Such a stigma or disability may be found where the official action either (a) automatically bars plaintiff from a specific set of positions within the government, or (b) generally blocks him from pursuing employment in his chosen field of interest.  See M.K. v. Tenet, 196 F.Supp. 2d 8, 16-17 (D.D.C. 2001) (citing O'Donnell v. Barry, 148 F.3d at 1140-42 and Siegert v. Gilley, 500 U.S. 226, 233 (1991)).  As our court of appeals has stated, such a claim

9

> requires that the government either have formally deprived one of
> a legal right . . . or have so severely impaired one's ability to take
> advantage of a legal right, such as a right to be considered for
> government contracts or employment or a right to seek non-
> government employment, that the government can be said to have
> "foreclosed" one's ability to take advantage of it and thus
> extinguished the right.

Mosrie v. Barry, 718 F.2d at 1161 (footnote omitted).

Under either theory, a threshold question is whether an adverse employment action actually took place. Plaintiff argues that although the government did not discharge or demote him, ABRA forced him to retire, and that such a "constructive discharge" constitutes an adverse employment action for due process purposes. See Compl. ¶ 12; Pl. Opp. at 12. Defendants respond that in this circuit, a forced resignation is not enough to make out a liberty interest claim – an "actual, official" termination or demotion is required. See Defendants' Reply to Pl. Opp. ("Rep.") at 6-8. Plaintiff adduces no authority to the contrary.[1]

Although the court of appeals for this circuit appears never to have held squarely that a constructive discharge or forced resignation is an insufficient basis for a liberty interest claim, its statements of the governing law have uniformly recited the requirement of *official* action. See O'Donnell v. Barry, 148 F.3d at 1140 ("discharge from government employment or at least a demotion in rank and pay" required) (quoting Mosrie v. Barry, 718 F.2d at 1161);

---

[1] Plaintiff cites three cases in support of the proposition that a "threat of imminent termination" by a government employer constitutes constructive discharge. See Pl. Opp. at 12 & n.19. These cases, however, are appeals of unemployment benefit determinations decided by the District of Columbia Court of Appeals and thus are irrelevant to the case at hand.

The Court has found only one federal court to have suggested (in dicta) that a constructive discharge might constitute an adverse employment action in the context of a due process liberty interest claim. See Sims v. New London, 738 F. Supp. 638, 646 (D. Conn. 1990) (ordering plaintiff to correct deficient pleading); cf. Hughes v. Alabama Dep't of Pub. Safety, 994 F. Supp. 1395, 1407-08 (M.D. Ala. 1998) (surveying cases).

Orange v. District of Columbia, 59 F.3d 1267, 1274 (D.C. Cir. 1995) (termination or change in

status required); United States Information Agency v. Krc, 905 F.2d 389, 397 (D.C. Cir. 1990)

(same).  Defendants argue that constructive discharge is insufficient because the constitutionally

protected liberty interest (as distinct from any property interest) resides not in the *current*

employment, but in the individual's ability to pursue *future* employment activities.  Because

resignation from one's position, even under the threat of termination, does not carry the same

stigma as an official action such as termination, it does not have so negative an effect on future

employment opportunities as to raise due process concerns.  See Rep. at 5-6.  The Court finds

this argument convincing, especially in light of the court of appeals' failure ever to suggest that

a constructive discharge might substitute for an official termination or demotion for liberty

interest analysis.  Because plaintiff alleges no discharge from employment or demotion, he fails

to state a liberty interest claim and this claim will be dismissed.  See O'Donnell v. Barry, 148

F.3d at 1140.


### C.  Tort Claims

Plaintiff asserts common law tort claims of defamation based on Councilman

Fenty's public statements about him and intentional infliction of emotional distress based on

those statements and the public disclosure of material in plaintiff's personnel file.  The Court

dismisses both counts for failure to state a claim.[2]

---

[2]     Defendants also contend that plaintiff's tort claims are barred for failure to comply with
the notice requirements of D.C. Code Ann. § 12-309, which states that before bringing an action
against the District of Columbia a potential claimant must notify the Mayor in writing "of the
approximate time, place, cause, and circumstances of the injury or damage" within six months
after the injury or damage was sustained.  D.C. CODE ANN. § 12-309.  These requirements are to
be interpreted liberally.  See Doe by Fein v. District of Columbia, 697 A.2d 23, 27 (D.C. 1997).
Notice is sufficient if it recites facts from which it could reasonably be anticipated that a claim

## 1. Councilman Fenty's Public Statements

Plaintiff asserts that at televised meetings of the District of Columbia Council and in statements to *The Washington Post* and other media outlets, Councilman Adrian Fenty impugned plaintiff's ethics and judgment, accused him of impeding the ABRA's investigation of the Macombo Lounge, and disclosed information contained in plaintiff's confidential personnel file.  <u>See</u> Pl. Opp. at 2-5, 16-18.  Plaintiff claims defamation and intentional infliction of emotional distress, alleging that Fenty's statements were false and defamatory, subjected plaintiff to "public hatred, contempt, ridicule, and distrust," and resulted in financial and emotional damage to plaintiff.  <u>See</u> Compl. ¶¶ 34-42.  The Court will dismiss these claims for failure to state a claim because the District of Columbia cannot be held liable for Councilman Fenty's statements in this context.

Councilman Fenty is not a defendant in this action.  If the District of Columbia is liable for his actions, it must be under a theory of *respondeat superior*.  *Respondeat superior* is a doctrine of vicarious liability that allows an employer to be held liable for the acts of employees committed within the scope of their employment.  <u>See</u> <u>Penn. Cent. Transp. Co. v. Reddick</u>, 398 A.2d 27, 29 (D.C. 1979).  If the allegedly tortious acts were undertaken outside the scope of the

---

against the District might arise, and in sufficient detail to reveal the basis for the District's potential liability. <u>See</u> <u>id</u>.

Councilman Fenty first commented publicly on plaintiff's case on February 13, 2003, the same day plaintiff was placed on administrative leave.  <u>See</u> Pl. Opp. at 1-2.  On April 18, 2003, plaintiff sent a letter to Mayor Anthony Williams describing Fenty's public statements (stating specifically that Fenty had "defamed my name"), the end of plaintiff's employment, and asserting that "this public bashing is causing me problems in obtaining other employment." Letter from Maurice Evans to Mayor Anthony Williams (April 18, 2003), Ex. H to Pl. Opp.  The letter was sent within six months of the alleged injury, and its contents were sufficient to notify the District of its potential liability under Section 12-309.

employment, the employer may not be held liable.  See id.  Thus, defendants may be held liable

for Councilman Fenty's alleged defamation only if his statements were made in the scope of his

"employment" with the District of Columbia.[3]

> To the extent that Councilman Fenty acted within the scope of his employment in

making public statements about plaintiff, he is protected by the doctrine of official immunity.  A

government official acting "within the outer perimeter of his duties" enjoys absolute immunity

from liability for common law torts including defamation, so long as the function being

performed is discretionary rather than purely ministerial.  Expeditions Unlimited Aquatic

Enterprises, Inc. v. Smithsonian Institution, 566 F.2d 289, 292 & n.5 (D.C. Cir. 1977) ("The

federal common law rule of absolute immunity of officials sued for defamation furthers the goal

of effective administration of government in the public interest."); see Barr v. Matteo, 360 U.S.

564, 575 (1959) (immunity from defamation claim) ("The fact that the action here taken was

within the outer perimeter of petitioner's line of duty is enough to render the privilege

applicable, despite the allegations of malice in the complaint[.]"); Doe v. McMillan, 459 F.2d

1304, 1317 (D.C. Cir. 1972) (applying official immunity to District of Columbia officials), rev'd

in part on other grounds, 412 U.S. 306 (1973); Sowders v. Damron, 457 F.2d 1182, 1184-1186

(10th Cir. 1972) (immunity against intentional infliction of emotional distress claim).  The court

of appeals for this circuit has held this immunity crucial to the proper functioning of

government:

---

[3]      Defendants argue that because the District of Columbia Council is a separate branch of
the D.C. government from the Office of the Mayor under D.C. CODE ANN. § 1-301.44 (2001
ed.), the District cannot be considered a Council member's "employer."  See Rep. at 9.  While
the Court is inclined to agree, it need not resolve this issue because the Court holds that the
District may not be held liable for Fenty's conduct in any event.

> The nation's welfare is dependent upon officials who are willing to
> speak forthrightly and disclose violations of the law and other
> activities contrary to the public interest . . . it is better to leave
> unredressed some defamations by officers acting out of malice or
> excess zeal, than to subject the conscientious to the constant dread
> of retaliation.

Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution, 566 F.2d at 293-94.

For these reasons, Councilman Fenty's conduct is shielded by official immunity and plaintiff's

tort claims based on that conduct are barred.[4]


2.  Disclosure of Personnel File

Plaintiff also bases his claim for intentional infliction of emotional distress on the

public disclosure of information in his confidential personnel file and of the OIG investigation of

him, although he does not specify what individual actually disclosed that information.  See Opp.

at 19-20.  Taken as true, plaintiff's allegations fail to state a claim for intentional infliction of

emotional distress.

To sustain a claim for intentional infliction of emotional distress under District of

Columbia law, a plaintiff must allege: (1) "extreme and outrageous" conduct on the part of the

defendant that (2) either intentionally or recklessly (3) caused the plaintiff severe emotional

distress.  Abourezk v. New York Airlines, Inc., 895 F.2d 1456, 1458 (D.C. Cir. 1990); Kerrigan

v. Britches of Georgetowne, 705 A.2d 624, 628 (D.C. 1997).  Conduct is "extreme and

---

[4]     The District of Columbia Speech or Debate Statute also affords Council members
absolute immunity from defamation suits for comments "made in the course of their legislative
duties."  D.C. CODE ANN. § 1-301.42 (2001 ed.); see Dominion Cogen, Inc. v. District of
Columbia, 878 F. Supp. 258, 261-62 (D.D.C. 1995).  The scope of this immunity, however,
extends only to conduct "within the legislative sphere."  Id.  Councilman Fenty's public
statements during Council meetings clearly are protected by this provision.  The Court need not
decide whether Fenty's statements to the press also would be protected by this privilege.

outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" – an extremely difficult standard to meet.  Kaiser v. United States, 761 F. Supp. 150, 156 (D.D.C. 1991) (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Especially in the employment context, the standard is exacting.  See Futrell v. Dep't of Labor Fed. Credit Union, 816 A.2d 793, 808 (D.C. 2003); Kerrigan v. Britches of Georgetowne, 705 A.2d at 628.

Plaintiff alleges that some unnamed individual "maliciously, fraudulently, and oppressively, with the wrongful intention of injuring plaintiff," disclosed information from his personnel file to the public.  See Compl. ¶ 31.  Accepting these allegations as true, this behavior still does not amount to the "outrageous," "extreme," and "utterly intolerable" behavior required to state a claim for intentional infliction of emotional distress.  Accordingly, this claim must be dismissed.  See Wise v. District of Columbia, 2005 U.S. Dist. Lexis 6361, at *14, *16 (D.D.C. 2005) (District employee whose termination for poor performance was reported in *The Washington Post* did not state claim for intentional infliction of emotional distress against supervisor who related information to press).[5]

---

[5]    Although the parties did not brief the issue, this claim also appears to be preempted by the Comprehensive Merit Personnel Act, D.C. CODE ANN. §§ 1-601 *et seq.* ("CMPA").  The CMPA is (with few exceptions) the exclusive avenue by which aggrieved employees of the District of Columbia may pursue work-related complaints.  See Baker v. District of Columbia, 785 A.2d 696, 697-98 (D.C. 2001);  Robinson v. District of Columbia, 748 A.2d 409, 411-12 (D.C. 2000) (holding that the only exception is for torts based on a claim of sexual harassment, which initially may be filed in the Superior Court); Stockard v. Moss, 706 A.2d 561, 567 (D.C. 1997).  Work-related complaints generally are held to include common-law tort claims against the employee's supervisors.  See Baker v. District of Columbia, 785 A.2d at 697-98 (emotional distress and defamation); Robinson v. District of Columbia, 748 A.2d at 411-12 (false light, emotional distress and defamation).

15

### III.  CONCLUSION

Because there is no genuine issue of material fact as to whether plaintiff possessed a legitimate expectation of continued employment with the District of Columbia, defendants are entitled to judgment as a matter of law on plaintiff's due process/property interest claim, and the Court therefore will grant defendants' motion for summary judgment on that count.  Because plaintiff does not allege an official termination or demotion by the District of Columbia government, the Court will dismiss plaintiff's due process/liberty interest claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The complaint also fails to state a tort claim against the District of Columbia based on the public statements of Councilman Adrian Fenty, either because plaintiff's factual allegations fail to satisfy the requirements of *respondeat superior* or because Fenty's comments were protected by official immunity.  Finally, plaintiff's factual allegations about the acts of other District of Columbia officials do not describe the sort of "extreme and outrageous" conduct required to state a claim for intentional infliction of emotional distress.  Accordingly, the Court will dismiss plaintiff's claims of defamation and intentional infliction of emotional distress for failure to state a claim.

An Order consistent with this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 27, 2005

16